BARBARA SANDS, APPELLEE, V. SCHOOL DISTRICT OF THE CITY OF LINCOLN, NEBRASKA, APPELLANT.

581 N.W.2d 894

Filed May 12, 1998. No. A-97-787.

John M. Guthery and Riko E. Bishop, of Perry, Guthery, Haase & Gessford, P.C., for appellant.

Robert L. Bals, of Harding, Shultz & Downs, for appellee.

HANNON, IRWIN, and MUES, Judges.

HANNON, Judge.

In this workers' compensation case, Barbara Sands seeks additional benefits for an injury that occurred in 1983 in the course of her employment with the School District of the City of Lincoln (the District). In 1987, the Nebraska Workers' Compensation Court awarded Sands, inter alia, disability benefits for a 10-percent permanent partial disability to her right leg. In the current proceedings, Sands seeks additional benefits on the basis that her right-leg incapacity has increased to 40 percent

as a natural progression from the 1983 injury. The District maintains that Sands' increased incapacity was not due solely to the previous injury as required by Neb. Rev. Stat. § 48-141 (Reissue 1993) and that the claim was barred by the statute of limitations. The trial judge found that the claim was not barred by the statute of limitations because the District had made a payment for the treatment of Sands' disability within 2 years of the filing of the petition and that Sands' increased disability in her right knee was due solely to the 1983 injury. The trial court awarded Sands additional benefits, and the Workers' Compensation Court review panel affirmed. In this court, the District argues the trial court erred in finding that the statute of limitations did not bar recovery and in finding the increase in disability was due solely to the 1983 injury. Sands had alleged in her petition that several other accidents contributed to her increased incapacity. The District contends that by these allegations Sands has judicially admitted the disability was not caused solely by the 1983 incident and that the evidence does not support such a finding in any case. We conclude that Sands' claim is not barred by the statute of limitations and that the allegations in her petition did not amount to a judicial admission, and under applicable case law, we cannot find the trial judge was clearly wrong in finding Sands' incapacity was due solely to the 1983 accident.

## I. BACKGROUND

In 1983, Sands was approximately 42 years of age and was working as an art teacher at Lincoln Northeast High School. Prior to 1983, Sands had injured her left knee in an automobile accident, but not her right knee. On December 19, 1983, Sands sustained an injury in the course of her employment when she tripped over a mop and struck both knees on the floor. As a result of this accident, Sands experienced medical problems with both knees.

On October 29, 1987, the Workers' Compensation Court entered an award for both injuries. The court found that on December 19, 1983, and February 24, 1987, Sands suffered work-related injuries. The court found that the 1987 injury caused Sands to incur medical bills but that she "failed to prove any disability either permanent or temporary" from the 1987

accident. The court also attributed some of the left-knee disability to her preexisting condition. The court awarded Sands, inter alia, benefits for a 5-percent permanent partial disability to the body as a whole, a 15-percent permanent partial disability to her left knee, and a 10-percent permanent partial disability to her right knee.

## II. PLEADINGS

In her petition filed on January 24, 1996, Sands alleged that since the October 29, 1987, award, she had "experienced an aggravation of her knee injuries . . . as a result of subsequent accidents arising out of and in the course of her employment . . . ." Sands then listed the following subsequent accidents: (1) On November 1, 1990, a student kicked her, resulting in a fall; (2) on February 6, 1991, a student fell back on her, causing a hyperextension of her right knee; (3) on April 5, 1993, she was rolling clay with a rolling pin, which resulted in a tearing sensation in the "cervical and innerthoracic muscular region" with tingling into her extremities; (4) on September 23, 1993, she fell on a slippery surface and aggravated problems in her knees, back, and neck; (5) on September 23, 1993, she was assaulted by a student, which aggravated the problems with her back and neck; (6) on March 24, 1994, she stepped off the upper part of a bleacher step and aggravated her right knee, lower back, and midback; (7) on May 3, 1995, she collided with a student and aggravated her knee and back; and (8) on November 17, 1995, she tripped and fell on concrete and injured both knees, her back, and her neck. Sands also alleged that in June 1990, she had a total right-knee replacement and ongoing treatment of both knees and her back. Such treatment had been paid for by the District within 2 years before the petition was filed. (Issues concerning the disability of the left knee and back are not part of this appeal. Therefore, these problems are mentioned only to the extent necessary to understand issues concerning the right knee.)

Sands further alleged that the District has paid her for the 20-percent permanent partial impairment of her right knee, that she has supplied the District with documentation evidencing a 40-percent permanent partial disability of her right knee, and

that the District has refused to pay her additional compensation. Sands prays for an award of additional compensation for the uncompensated permanent partial disability.

In its answer, the District admits that Sands has claimed additional injuries as alleged in her petition and that it paid medical expenses for Sands within 2 years of the filing of the petition. The District alleges that it paid for additional permanent partial impairment, but not within 2 years of the filing of the petition. The District alleges the statute of limitations bars Sands' claim for increased impairment to her knees as a result of the 1983 injuries and prays that Sands' petition be dismissed.

Before trial, the parties stipulated the issues were (1) whether the District is responsible for paying for increased impairment to the right knee and, if so, the amount of compensation; and (2) whether the claim is barred by the statute of limitations or whether the statute was tolled by ongoing treatment.

### III. SUMMARY OF EVIDENCE

At trial, the parties stipulated that the District paid the benefits awarded in 1987 for the 10-percent impairment to Sands' right knee and an additional "10% [impairment] of the right lower extremity on or about 5/25/93."

Sands testified about the December 19, 1983, injury to her left knee. After that injury, Sands began to experience problems with her right knee, and after the award of October 29, 1987, she continued to experience difficulties with her right knee.

Sands testified that she was aware of the post-1983 injuries alleged in her petition. Sands testified about each injury, the symptoms she experienced, and the medical treatment she received after each. The District's attorney extensively cross-examined Sands about these various injuries. Sands maintained that the 1983 incident caused all the impairment in her knee and that none of the other incidents affected the impairment. In sum, Sands' testimony was that she suffered certain disabilities or impairments after each of the post-1983 accidents, that she was treated, and that her knee returned to the condition it had been before each post-1983 accident. Since we have determined this testimony relates to Sands' credibility, we will not discuss it in detail.

The remainder of Sands' direct examination, and much of her cross-examination, consists of attempts by counsel to elicit from Sands the nature and extent of the examination made by the medical doctor retained by the District in order to attack or bolster the foundation or the credibility of the doctor's testimony. If the trial court had accepted the testimony of the District's expert and denied Sands relief, that action would clearly have been supported by the District's expert testimony. However, we have concluded the pivotal issue is whether there is sufficient evidence from Sands' expert, Dr. John C. Yeakley, to support the trial court's finding in favor of Sands. Therefore, the testimony that goes to the credibility of either expert or of Sands is not material to the issues of this appeal, and we will not summarize it except as necessary to understand the issues.

Susan Wright, risk management specialist for the District, testified that the District's records show the last payment made by the District to Sands was on May 25, 1993, and that such payment was for the increase in impairment rating from 10 percent to 20 percent.

Sands' medical evidence consisted primarily of the depositions of Yeakley and certain reports he made. The sufficiency of Yeakley's testimony is the ultimate question on this appeal, and his testimony will be summarized when we consider this question later in the opinion.

The record also contains several accident reports, medical reports, and records of compensation and benefits received by Sands. This evidence will be summarized when relevant to the issue under consideration.

### 1. 1997 WORKERS' COMPENSATION COURT AWARD

The Workers' Compensation Court found that the District made a payment for physical therapy treatment of Sands' right knee in the summer of 1994, within 2 years prior to the filing of the application, and therefore, Sands' claim was not barred by the statute of limitations. The court found that Sands underwent a knee replacement in June 1990; that the knee injury in 1983 was a material and substantial cause of the replacement; and that Yeakley noted that approximately a year later, the replacement had failed and opined Sands suffered from a 40-percent

permanent partial disability. The court specifically found Sands suffered that increase in disability due solely to the 1983 accident and awarded compensation accordingly, but found a reasonable controversy existed and refused any award of attorney fees or penalties.

## 2. WORKERS' COMPENSATION REVIEW PANEL

On appeal, the review panel affirmed, and stated: "We can dis[c]over nowhere within the present record an opinion by any physician stating in so many words that the 40 percent permanent impairment which the plaintiff presently suffers to her right knee is due solely to the accident and injury of December 19, 1983." Nonetheless, the panel found that the lower court

> could and did conclude from these opinions expressed by Dr. Yeakley that the 40 percent permanent impairment which the plaintiff presently suffers in her right knee is due to the accident of December 19, 1983, and the surgeries made necessary to her right knee because of the osteoarthritis which was lit up or aggravated by the accident in question. We conclude Judge Ramirez was not clearly wrong.

The panel also found the District had paid bills for Sands' care within 2 years of the date of the filing of Sands' petition; thus, the District failed to prove the statute of limitations defense. The panel also ordered the District to pay Sands attorney fees in the sum of $1,500, plus interest on the unpaid amounts of compensation.

## IV. ASSIGNMENTS OF ERROR

The District alleges the review panel erred (1) in affirming the trial court's finding that Sands' claim for increased disability to her right knee was not barred by the statute of limitations, (2) in affirming the trial court's finding that Sands' increase in disability to her right knee was due solely to the accident and injury of 1983, and (3) in awarding attorney fees plus interest on unpaid amounts of compensation.

## V. STANDARD OF REVIEW

A judgment, order, or award of the compensation court may be modified, reversed, or set aside only upon the grounds

that (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the judgment, order, or award; or (4) the findings of fact by the compensation court do not support the order or award. Neb. Rev. Stat. § 48-185 (Reissue 1993); *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998); *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Berggren v. Grand Island Accessories*, 249 Neb. 789, 545 N.W.2d 727 (1996). In determining whether to affirm, modify, reverse, or set aside the judgment of the review panel, a higher appellate court reviews the finding of the trial judge who conducted the original hearing. *Pearson v. Lincoln Telephone Co.*, 2 Neb. App. 703, 513 N.W.2d 361 (1994).

▮ An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Berggren, supra.* Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Kerkman, supra.*

## VI. ANALYSIS

### 1. STATUTE OF LIMITATIONS DEFENSE

▮ The applicable statute of limitations is contained in Neb. Rev. Stat. § 48-137 (Reissue 1993) and provides in pertinent part:

> In case of personal injury, all claims for compensation shall be forever barred unless, within two years after the accident . . . one of the parties shall have filed a petition as provided in section 48-173. . . . *When payments of compensation have been made in any case, such limitation shall not take effect until the expiration of two years from the time of the making of the last payment.*

(Emphasis supplied.)

The District's records establish the last payment made to Sands in relation to the 1983 accident was a payment of $4,314.28 on or about May 25, 1993, for the increase in her incapacity from 10 percent to 20 percent. Sands filed her peti-

tion on January 24, 1996, and the District argues her claim is therefore barred by the 2-year statute of limitations in § 48-137.

■ Yeakley testified that Sands received therapy from Karen Knortz for both knees during the summer of 1994. Yeakley testified that the 1983 injury was a material and substantial contributing factor to the need for such treatment. Sands testified that during the summer of 1994, she received physical therapy from Knortz for the right knee. The evidence shows the District made a payment to Knortz Snyder Physical Therapy on September 27, 1994. When an employer furnishes medical, surgical, or hospital services to an employee, the payment constitutes payment of compensation within the meaning of the Nebraska Workers' Compensation Act for statute of limitations purposes. *Gourley v. City of Grand Island*, 168 Neb. 538, 96 N.W.2d 309 (1959). Therefore, the evidence supports a finding that the District was still paying compensation for Sands' knee injury on September 27, 1994, a date within 2 years of the filing of the petition in this case. We cannot say the trial judge was clearly wrong in finding the District failed to sustain its burden of proving the statute of limitations defense.

## 2. INCREASE IN DISABILITY

The District argues the trial court erred in finding Sands' increased disability was due solely to the 1983 accident because (1) she judicially admitted that several post-1983 accidents caused her increased disability and (2) the medical evidence does not establish the necessary degree of causation.

### (a) Effect of Sands' Pleading

■ In her petition, Sands alleged that since the 1983 award she had "experienced an aggravation of her knee injuries . . . as a result of subsequent accidents arising out of and in the course of her employment . . . including the following instances." Sands then listed several accidents that allegedly occurred between 1988 and 1995. On the theory that the allegation was contrary to the notion that the injury was "due solely to" the accident which was the basis for the original award, the District argues that this pleading constitutes a judicial admission and precludes recovery. The District cites *Johns v. Carr*, 167 Neb. 545, 93 N.W.2d 831 (1958), and argues that a party may invoke

the language of his or her adversary at any time and that an admission in an operative pleading is a judicial admission which constitutes a waiver of all controversy so far as the adverse party desires to take advantage of it.

We observe that the petition did not allege that the increase in incapacity was "due solely" to the 1983 accident and that it therefore would have been demurrable. Not only did the District fail to demur, but we are unable to locate anything in the record to show that the District claimed a judicial admission was made by Sands in her petition. Instead, the District treated the allegations of post-1987 injuries as ordinary admissions. On cross-examination of Sands, the District's counsel sought to use these allegations to weaken Sands' credibility and to draw admissions from her that would establish that the incapacity which she claimed was not due solely to the 1983 accident. It appears that Sands held her ground and denied any facts which would establish any admission that the various post-1983 accidents alleged in the petition caused any increase in her incapacity. Basically, Sands testified that after each post-1983 accident, her knee returned to the condition it was in before the respective accident.

This is a workers' compensation case, not an ordinary civil case. *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987), is a workers' compensation case which we believe dictates the approach we should take in this case. In *Hayes*, the plaintiff alleged she injured her knee while lifting a 200-pound I-beam with a coworker. Ultimately, the compensation court found that the plaintiff suffered a compensable injury to her right leg by virtue of her being frequently required to work on her knees. The employer raised the question inherent in such inconsistency by arguing the compensation court's findings were outside the issues of the case. The employer did not argue the plaintiff made a judicial admission. Both petitions allege the cause of the plaintiff's condition was different from the cause proved at trial, and in this respect, the petition in *Hayes* is quite similar to Sands' petition. The *Hayes* court called the error a variance, that is, there was a variance or difference between the pleadings and the proof. We believe this is the correct nomenclature to use in this case because there is a difference between Sands' pleading and her proof. In *Hayes*, the court

said that while the pleadings might affect the plaintiff's credibility, the pleadings could not discredit her as a matter of law.

We also observe: " 'A judicial admission is a formal act done in the course of judicial proceedings which is a substitute for evidence, thereby waiving or dispensing with the production of evidence by conceding for the purpose of litigation that the proposition of fact alleged by the opponent is true. . . .' " *Kuhlmann v. Platte Valley Irr. Dist.*, 166 Neb. 493, 508, 89 N.W.2d 768, 778 (1958).

A judicial admission is ordinarily binding, unless the court in its discretion relieves the admitting party from that consequence. *Id.* An admission in a pleading which is only such by implication does not seem to reach the level of a formal act, particularly when the party who would benefit from the admission does not assert it is a judicial admission at trial, where if proper, the court could relieve the admitting party of its effect. We conclude an implied admission in a petition is not sufficiently formal to constitute a judicial admission, particularly when no such claim was made in the trial court.

In *Hayes*, the employer argued there was an impermissible variance between the pleadings and the proof. The court cited Neb. Rev. Stat. § 48-168 (Reissue 1984), which provided that the compensation court is not bound by technical and formal rules of procedure, and Neb. Rev. Stat. § 25-846 (Reissue 1995), which provides that no variance shall be deemed material unless it actually misled and prejudiced the adverse party. The court held the variance did not deprive the employer of due process. In this case, the pleading which the District alleges to be a judicial admission was used as ordinary admissions in Sands' cross-examination to weaken her testimony, and the claim that the post-1983 injuries were a cause of Sands' impairment was thoroughly litigated. We conclude the variance did not deprive the District of due process, nor did it prejudice the District in the litigation; therefore, the variance is immaterial.

### (b) Sands' Prima Facie Case

Section 48-141 provides, in pertinent part, that a workers' compensation award "may be modified as follows: . . . at

any time after six months from the date of the agreement or award, an application may be made by either party on the ground of increase or decrease of incapacity *due solely to the injury . . . ."* (Emphasis supplied.) The Supreme Court of Nebraska has recently stated:

> To obtain a modification, the applicant must prove, by a preponderance of evidence, that the increase or decrease in incapacity was due solely to the injury resulting from the original accident. [Citations omitted.] In proving the increase or decrease in incapacity, the applicant must prove there now exists a material and substantial change for the better or worse in the condition—a change in circumstances that justifies a modification, distinct and different from the condition for which the adjudication had previously been made. [Citation omitted.] To determine whether an increase or decrease in incapacity has occurred, " 'the whole question of plaintiff's *physical condition* can again be inquired into . . . .' "

*Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 34, 573 N.W.2d 757, 761 (1998).

A finding that an applicant's incapacity has increased under the terms of § 48-141 is a finding of fact. *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991); *Gomez v. Kenney Deans, Inc.*, 232 Neb. 646, 441 N.W.2d 632 (1989). The trial court found that Sands' increased disability was caused solely by the 1983 injury. The District argues this finding was contrary to the evidence. Thus, the only question is whether this finding is supported by sufficient evidence. The sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court must be considered in the light most favorable to the successful party. *Hohnstein, supra.*

To determine whether the evidence is sufficient to support a finding that Sands' increased disability was due solely to the 1983 accident, we must determine the meaning and effect of the phrase "due solely to the injury."

### 3. REVIEW OF CASES

In *Sidel v. Spencer Foods*, 215 Neb. 325, 338 N.W.2d 616 (1983), Sidel was injured in April 1977 and underwent a lumbar

laminectomy later that month. In March 1978, a cervical fusion was performed to remedy an unrelated noncompensable injury, and in July 1978, Sidel experienced pain in his lower back while rising from a chair at work. In April 1979, the Workers' Compensation Court awarded Sidel a 20-percent permanent partial disability for the 1977 accident. In 1980 and 1981, Sidel underwent further lumbar surgery, and in 1981, he filed an application for compensation on the basis that his incapacity had increased. Sidel's expert testified that if there was a 1978 incident, he could not say with reasonable probability that Sidel's current problem was due solely to the 1977 accident. The trial court found Sidel failed to prove the increase in his incapacity was due solely to the 1977 accident. The Nebraska Supreme Court affirmed, and stated,

> There can be no rational argument but that the foregoing language [of § 48-141] places upon Sidel the burden of proving by a preponderance of the evidence that the increase in his incapacity was due solely and only to the injury resulting from the original accident. The plain and ordinary meaning of the words used in the statute say, as clearly as the language of this jurisdiction is capable of expressing, that such is his burden.

215 Neb. at 327, 338 N.W.2d at 617-18. The court also cited cases where the above rule has been applied. The court concluded, "The medical evidence fails to meet that burden." *Id.* at 327, 338 N.W.2d at 618. See *Gomez, supra* (stating court refused to find increase in incapacity on basis that worker's unsuccessful rehabilitation created increase in his incapacity).

In *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991), in 1988, the worker was determined to have suffered a compensable injury to her knees from an accident that occurred on May 10, 1983. This determination included injuries suffered in a 1986 fall that directly related to the 1983 injury. The worker was awarded permanent partial disability for these injuries. On June 21, 1989, the worker suffered further injury when her right knee " 'gave out' " and she fell. *Id.* at 978, 468 N.W.2d at 601. The worker filed an application for additional benefits under § 48-141 on the grounds of increased incapacity. The worker was awarded additional benefits, and the employer appealed. At

trial, the worker testified she had not suffered any injuries or accidents that affected her right knee between the date of the original award and June 21, 1989. However, the worker testified that she had been on crutches during that time. The employer argued that the medical testimony failed to show the worker's worsened condition was due solely to the May 1983 accident. The court held that medical expert evidence was necessary to show that the " 'giv[ing] way' " of her knee in 1989 was due to the 1983 accident. *Id.*

The analysis used in *Hohnstein* is helpful in analyzing this case. In *Hohnstein*, the court stated the question to be considered was "whether [the worker's] medical expert evidence sufficiently demonstrated the causal connection between the 1983 accident . . . and her increased incapacity suffered after February 1, 1989." *Id.* at 981-82, 468 N.W.2d at 603. The court then discussed the troublesome problem between the words "expert," "reasonable medical certainty," "probability," and "possibility." The court stated,

> "In the area of certain disabilities it is impossible for a reputable doctor to testify with absolute certainty that one cause and one cause alone is the reason for the disability. Medical diagnosis is not that exact a science. Even though in most instances a certain result may follow, to be accurate the medical expert hedges by the use of the words 'probably due.' "

237 Neb. at 982, 468 N.W.2d at 603. The court concluded, "In the final analysis, for medical testimony to be the basis for an award, it must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability." *Id.*

In *Hohnstein*, the worker's doctor testified that his answers were based on a reasonable degree of medical certainty, but as to the cause of the worker's disability, he used the phrase " 'one would assume they were causally related.' " *Id.* at 983, 468 N.W.2d at 604. The court stated that in essence, the doctor testified that nothing happened to cause the new problem and that the knee problems were " 'causally related' " to the 1983 accident. *Id.* In a deposition, the doctor had stated he could not state with a reasonable degree of medical certainty or probability that

the knee problem occurring after the original award was caused solely by the 1983 accident. One of the reasons given for the court's conclusion that this was of no consequence was that an expert witness' good faith self-contradiction presents a question of fact to be resolved by the compensation court.

In the recent case *Starks v. Cornhusker Packing Co.*, 254 Neb. 30, 573 N.W.2d 757 (1998), the Supreme Court cited *Hohnstein* with approval. The facts in *Starks* are such that analyzing them would not be helpful in this case, but the court restated the controlling rule that an expert's opinion is not validated or invalidated based solely on the presence or lack of the magic words " 'reasonable medical certainty.' " *Starks*, 254 Neb. at 35, 573 N.W.2d at 762. Instead, the testimony should be judged in view of the entirety of the expert's opinion. We shall review the evidence, particularly Sands' expert's testimony, with this rule in mind.

### 4. Review of Evidence

The record contains the deposition testimony of Yeakley, an orthopedic surgeon. Yeakley had treated Sands since 1984 and was also deposed in 1987. Parts of Yeakley's 1987 deposition are helpful as a background to understanding Sands' present condition.

In his 1987 deposition, Yeakley recognized Sands had previous problems with her left knee. However, Yeakley opined that the fall of December 19, 1983, was the cause of the problems she had with her knee and was the reason for the need for continued treatment. Yeakley had performed surgery on Sands twice, and her condition had gotten worse. Yeakley testified that Sands was developing a problem with her right knee which was similar to that of her left knee. He opined that the problem with her right knee was caused by the fact she was not able to bear weight on her left leg, which caused increased wear and tear on the right leg. Yeakley also opined that the degenerative osteoarthritis he observed while operating on Sands was caused by the 1983 incident but that he could not tell how long the condition had existed. Yeakley defined degenerative osteoarthritis as the "wearing out" of the joint surface upon which the person walks. Yeakley said that such condition can be the result of genetics or injuries and that the condition can exist without

symptoms or pain. Yeakley stated, "I do not foresee in the near future that things are likely to get much better. There is a possibility they will get worse. Certainly I would expect them to stay pretty much the same." Yeakley opined that the right knee might be experiencing the same degenerative osteoarthritic changes as the left knee.

Yeakley continued to treat Sands after 1987 and was again deposed on October 29, 1996. On December 11, 1991, Yeakley opined that because of persistent pain and malfunction of the right knee, the disability rating of that knee was 40 percent, an increase from a previous rating of 20 percent. Yeakley rendered similar opinions on April 22, 1993, and on August 30, 1995, after Sands underwent a total knee replacement. On July 15, 1996, Yeakley opined that the injuries and insult to her knees that she suffered had "aggravated the situation but have not materially changed it" and that the degenerative osteoarthritis had worsened over the years. Yeakley stated, "[T]he incident of December 19th, 1983, materially produced the symptoms for which she . . . eventually underwent surgery on both knees." In October 1996, Yeakley prescribed physical therapy as a treatment of Sands' right knee.

Yeakley testified that Sands had limited motion in her right knee and continued pain and that Sands had arthroscopic surgery on both knees, a proximal tibial osteotomy on both knees, and a total knee replacement of her right knee. Counsel asked Yeakley several questions to establish causation of Sands' condition. In effect, Sands' evidence to support causation was that to a reasonable degree of medical certainty, Yeakley was of the opinion that Sands' increased disability and all the other various incidents were a "direct and proximate result" of the 1983 accident.

Yeakley was also asked about the several incidents which Sands alleged in her petition had aggravated her knee. Yeakley testified these post-1987 incidents were "part and parcel of an ongoing degenerative process in the knees and multiple aggravations of that process, each of which has an impact on the final outcome." He testified that they "increase disability, they do not increase impairment," but that they had not increased disability since 1991.

Yeakley testified that Sands had the right-knee replacement surgery in June 1990 and that this was occasioned by the degenerative osteoarthritis. Yeakley was asked about a November 7, 1990, incident and testified this incident caused her right knee to be more painful. Yeakley was asked, "Are you able to determine, Doctor, in your professional opinion as to the amount of impairment of that 40 percent impairment that is caused by the natural progression of the preexisting conditions or by new traumas other than December of 1983 . . . ?" Yeakley answered no. Yeakley testified that Sands' impairment increased from 10 to 20 percent subsequent to the replacement surgery as a result of the suboptimal results of that surgery. Yeakley stated, "[The] entire process on this lady's knee is a progressive degenerative osteoarthritic condition which eventually evolved to a point where her knee . . . as viewed by me as of my last evaluation of it was 40 percent disability." Yeakley testified that he found it difficult to separate how much disability is due to repeated traumatic events and the presence of arthritis but that the injury of December 19, 1983, was a material and substantial factor as it related to the need for knee replacement and the impairment. On cross-examination, Yeakley admitted that the degenerative osteoarthritis that existed prior to 1983 was a contributing factor to the right-knee replacement.

Yeakley testified that in February 1991, 6 months after the replacement surgery, Sands had a 20-percent impairment of her right knee, and that 8 months later, the impairment had increased to 40 percent. Yeakley admitted there were "several major contributing factors to her treatment since 1986," including the accident of December 1983, the degenerative osteoarthritis, the "multiple other incidents of traumas to her right or left knee," and the natural aging process.

The Workers' Compensation Court, as the trier of fact, is the sole judge of the credibility of the witnesses and the weight to be given their testimony. *Kerkman v. Weidner Williams Roofing Co.*, 250 Neb. 70, 547 N.W.2d 152 (1996); *Toombs v. Driver Mgmt., Inc.*, 248 Neb. 1016, 540 N.W.2d 592 (1995). The Nebraska Supreme Court has stated that the compensation court may determine which, if any, of the expert witnesses to believe. *Surratt v. Watts Trucking*, 249 Neb. 35, 541 N.W.2d 41 (1995).

In the instant case, the court chose to believe Yeakley rather than the expert produced by the District. When the record in a workers' compensation case presents conflicting medical testimony, the appellate court will not substitute its judgment for that of the compensation court. *Kerkman, supra*; *Paulsen v. State*, 249 Neb. 112, 541 N.W.2d 636 (1996).

The District argues that because Yeakley does not specifically state that Sands' increase in disability is due *solely* to the 1983 injury, the review panel and the lower court were clearly wrong. In *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991), there also was no medical expert testimony that the worker's increased incapacity was due solely to the original compensable accident. In fact, the worker's doctor testified that he could not state with a reasonable degree of medical certainty that the worker's knee problems were caused solely by the compensable accident. In *Hohnstein,* the court held this was of no consequence for two reasons. First, the previous order making the award was res judicata. This particular holding would settle any claim that Yeakley did not exclude Sands' preexisting degenerative osteoarthritis as a substantial contributing factor to the 40-percent disability of the knee. This is so because in the previous award, the preexisting condition was determined not to be a cause of the 10-percent disability. This reason would not dispose of the evidence of the possible inconsistency of the post-1983 incidents or the natural aging process. Some of the post-1983 incidents happened after Yeakley determined Sands' incapacity had increased to 40 percent, and these are clearly immaterial. The second reason given in *Hohnstein* disposes of the other possible inconsistencies, that is, the rule that a good faith self-contradiction of an expert witness presents a question of fact to be resolved by the compensation court. See, also, *Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990); *Vredeveld v. Gelco Express*, 222 Neb. 363, 383 N.W.2d 780 (1986).

One may well wonder if there is complete unanimity between Yeakley, the attorney, and the judges of the courts concerning the specific meaning of terms such as "material and substantial," "substantial contributing factor," et cetera, in relation to the words "due solely to" contained in § 48-141. At least some

of Yeakley's opinions on causation seem to contradict other opinions. The District points to such contradictory opinions. For example, the District states,

> Dr. Yeakley increased his assessment of Sands' impairment to her lower right extremity from 20 to 40 percent. . . . He further notes that this increase is "because of change in her physical condition and **other physical impairments which are impacting on the function of the knee.**" . . . Nowhere does it state that the increase was due solely to the December 1983 accident.

(Emphasis in original.) Brief for appellant at 14.

As pointed out above, *Hohnstein* holds that such good faith inconsistencies do not justify a finding that the trial court was clearly wrong. See, also, *Heiliger v. Walters & Heiliger Elec., Inc., supra*; *Vredeveld v. Gelco Express, supra*.

For the above-stated reasons, we determine that the record does not justify a finding that the trial court clearly erred in finding that Sands' increase in incapacity was due solely to the 1983 accident.

### 5. ATTORNEY FEES

The review panel ordered the District to pay $1,500 for attorney fees to Sands. Neb. Rev. Stat. § 48-125 (Reissue 1993) states that a reasonable attorney fee may be awarded to the employee if an employer files an application for review before the compensation court from an award of a judge of the compensation court and fails to obtain any reduction in the amount of such award. The review panel's award of attorney fees was consistent with § 48-125, and we cannot say the review panel was clearly wrong. As such, we affirm the review panel's award of attorney fees.

### VII. CONCLUSION

The judgment of the compensation court, as affirmed by the review panel, is therefore affirmed.

AFFIRMED.