THOMAS YARPE, APPELLANT, V. LAWLESS DISTRIBUTING CO.,
DEFENDANT AND THIRD-PARTY PLAINTIFF, APPELLEE, AND
STATE OF NEBRASKA, SECOND INJURY FUND,
THIRD-PARTY DEFENDANT, APPELLEE.
587 N.W.2d 417

Filed December 8, 1998.   No. A-98-191.

Thomas F. Dowd, of Dowd & Dowd, for appellant.

John W. Iliff, of Gross & Welch, P.C., for appellee Lawless Distributing Co.

Don Stenberg, Attorney General, John R. Thompson, and Hobart B. Rupe for appellee State.

IRWIN, Chief Judge, and SIEVERS and INBODY, Judges.

IRWIN, Chief Judge.

## I. INTRODUCTION

Thomas Yarpe appeals from an order of the Workers' Compensation Court review panel affirming an order of the Workers' Compensation Court dismissing his petition for benefits. The court determined that Yarpe failed to establish the occurrence of an accident, and dismissed his petition. Because we find that the court's conclusions are supported by competent evidence in the record and the court's factual conclusions were not clearly erroneous, we affirm.

## II. BACKGROUND

Yarpe was employed for approximately 5½ years by Lawless Distributing Co. (Lawless) and Lawless' predecessor company, Capitol Liquors Inc. (Capitol), as a warehouseman, loading trucks and operating a forklift. In 1992, while working for Capitol, he suffered a work-related injury to his lower back. Yarpe underwent surgery as a result of this injury. After the surgery, Yarpe returned to his employment, with a permanent lifting restriction. Ultimately, Yarpe entered into a lump-sum settlement regarding the 1992 injury.

Yarpe alleged that he suffered another work-related accident on September 6, 1995, while lifting cases of beer. Yarpe was seen by Drs. David W. Stamm and Daniel L. McKinney with

regard to his symptoms. Yarpe ultimately underwent surgery again. On November 30, Lawless apparently terminated Yarpe's employment because he was no longer physically able to perform his job requirements.

On December 22, 1995, Yarpe filed a petition in the Workers' Compensation Court seeking "temporary total disability benefits, medical bills, vocational rehabilitation, loss of earning power, waiting penalty, and attorney fees." Lawless filed a third-party petition against the Second Injury Fund. On October 11, 1996, the case was tried to the court. Yarpe was the only witness called to testify.

After the trial, the compensation court entered an order dismissing Yarpe's case. The court held that Yarpe failed to prove that he "suffered injury in a discrete event occurring on September 6, 1995." The court noted that the lump-sum settlement Yarpe entered into with regard to the 1992 injury barred recovery for any disability or expenses arising out of a degeneration of his condition as a result of the 1992 injury, and allowed further recovery only if Yarpe suffered a new accident. The court noted various inconsistencies in Yarpe's proof and also noted that Yarpe did not call any corroborating witnesses, despite testifying that he informed coemployees of the injury when it happened. The workers' compensation review panel affirmed the court's dismissal. This timely appeal followed.

## III. ASSIGNMENTS OF ERROR

Yarpe assigns two errors on appeal. Yarpe alleges that there was not sufficient evidence to support the compensation court's findings and that the court's factual findings were clearly erroneous.

## IV. ANALYSIS

### 1. STANDARD OF REVIEW

Pursuant to Neb. Rev. Stat. § 48-185 (Reissue 1993), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the

order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Owen v. American Hydraulics*, 254 Neb. 685, 578 N.W.2d 57 (1998); *Sands v. School Dist. of City of Lincoln, ante* p. 28, 581 N.W.2d 894 (1998). The sufficiency of the evidence to support findings of fact made by the Workers' Compensation Court must be considered in the light most favorable to the successful party. *Sands v. School Dist. of City of Lincoln, supra.*

In determining whether to affirm, modify, reverse, or set aside the judgment of the workers' compensation review panel, a higher appellate court reviews the finding of the trial judge who conducted the original hearing. *Owen v. American Hydraulics, supra*; *Sands v. School Dist. of City of Lincoln, supra.* Findings of fact made by the Workers' Compensation Court after review have the same force and effect as a jury verdict and will not be set aside unless clearly erroneous. *Id.*

## 2. Supporting Evidence

As noted above, Yarpe was the only witness to testify at trial. Both Yarpe and Lawless offered various exhibits, including medical reports and depositions, which were received by the compensation court.

According to his testimony, Yarpe suffered an accident while lifting cases of beer on September 6, 1995. Yarpe testified that he completed his shift and that he then told two coworkers about the injury. Yarpe testified that he called the personnel director the next morning and indicated that he would not be able to work because of the injury, and was referred to see Stamm.

According to Stamm's medical notes, he saw Yarpe on September 7, 1995, the day after the alleged incident. Stamm noted that "[t]he patient is here for evaluation of his low back. He has been having difficulties with it off and on for about the last two months on his most recent round. He reports that within the last couple of days he has been having a very severe back pain." Stamm's medical notes also indicate that Yarpe "has had no recent history of direct trauma, blows, injuries or falls." Finally, Stamm's medical notes indicate that Yarpe "states that [the pain] is not as bad as it previously has been." Stamm's medical

notes include an "Injury Notification" form, which includes a diagnosis of "back strain" and "recurrence of chronic condition." The form includes a section for information about the specific injury, but no information was included on the form concerning any incident on September 6. Stamm's medical notes do not include any reference to a specific incident on September 6.

On September 20, 1995, Yarpe was treated by McKinney, who was the doctor who performed the surgery in 1992. McKinney's medical notes indicate that Yarpe returned to McKinney's office on September 20, "stating that he was continuing to have a considerable amount of back pain." McKinney recorded that Yarpe "feels that over the past two years his condition has gradually become worse." McKinney stated in his notes that "I continue to believe that Mr. Yarpe's difficulties are secondary to a degenerative lumbar intervertebral disk." In office notes dated November 13, 1995, McKinney detailed a "history of present illness," but there is no mention of any incident on September 6. On November 29, McKinney authored a letter to Yarpe's attorney in which he indicated that "Mr. Yarpe has recently told me that this started after he was doing very heavy lifting at work on September 6, 1995. Prior to that, I did not have a specific injury date." McKinney performed a second surgery on Yarpe in June 1996.

On September 27, 1996, Yarpe was seen by Dr. Alan H. Fruin, who conducted an independent medical examination. Fruin concluded that the "surgery of June 1996 was the result of an ongoing disc problem at L4-L5 or a progression of that pre-existing condition." The L4-5 disk is the portion of Yarpe's back which was operated on in both the 1992 and the 1996 surgeries. Fruin further concluded that "[b]ased on the medical records and especially those records of Dr. Stamm dated September 7, 1995, it is clear that there was not a specific work related incident on September 6th, but rather this problem gradually built up over time because of his general activities."

In a deposition taken on July 16, 1996, Yarpe testified that after the 1992 surgery, he had no experience of pain in his lower back until the alleged incident in September 1995. Medical records from McKinney's office, as well as Yarpe's testimony at

trial, however, indicated that Yarpe refilled a prescription for Darvocet, a painkiller, 8 to 10 times between May and September 1995. At trial, Yarpe explained this apparent inconsistency by testifying that he suffered from a "backache" throughout 1995, but that it was distinguishable from a sharp "pain" in his back, which is what he experienced after the alleged incident on September 6, 1995.

All of the above evidence would support the compensation court's conclusion that Yarpe did not suffer an accident in September 1995, but, rather, was experiencing the effects of continued degeneration resulting from the original injury in 1992. As such, there is sufficient evidence to support the court's findings, and we do not find the court's factual conclusions to be clearly erroneous.

### 3. LACK OF CORROBORATION

In the order of dismissal, the compensation court noted that Yarpe testified that he had reported his injury to two coworkers on the same day it happened and that he had reported the injury to the personnel director the following day. However, Yarpe did not call any of these individuals to testify. The court noted that Yarpe "is not obliged to do so, but his failure to do so allows the Court to conclude that perhaps these witnesses would not corroborate the plaintiff's testimony with respect to his reporting of his accident."

Yarpe argues on appeal that the compensation court really based its conclusion and dismissal on this fact. Yarpe argues that the court improperly applied the "adverse inference" rule of evidence in this case. Brief for appellant at 11. In support of his argument, Yarpe quotes the Nebraska Supreme Court's opinion in *First Nat. Bank v. First Cadco Corp.*, 189 Neb. 553, 203 N.W.2d 770 (1973). Specifically, Yarpe quotes the Supreme Court in holding that " 'after the plaintiff has introduced evidence tending to prove his case, if the defendant fails to testify to matters peculiarly within his knowledge necessary to his defense, a presumption exists that his testimony, if produced, would militate against his interest . . . .' " *Id.* at 573, 203 N.W.2d at 783. Yarpe then proceeds to explain why this rule is not properly applied in the present case.

In the present case, the compensation court noted, as did the review panel, that Yarpe's failure to call an apparently available witness who Yarpe purported at trial would possess information important to proving Yarpe's case could be considered when deciding the weight to be given to Yarpe's testimony. The Supreme Court has held that in conjunction with the above-quoted proposition of law, the trier of fact is the sole judge of what probative force to give to the fact that a party has failed to call a witness or produce evidence. *In re Estate of Schoch*, 209 Neb. 812, 311 N.W.2d 903 (1981); *Dunbier v. Stanton*, 170 Neb. 541, 103 N.W.2d 797 (1960). "[T]he relative convincing powers of the inferences to be drawn from failing to call or examine a witness and other evidence are for the determination of the trier of fact." *In re Estate of Schoch*, 209 Neb. at 818, 311 N.W.2d at 907. As such, we believe that the compensation court committed no error in considering Yarpe's failure to provide testimony from witnesses he suggested at trial would possess corroborating testimony.

## V. CONCLUSION

Because there was sufficient evidence in the record to support the findings of the compensation court and because the court's factual findings were not clearly erroneous, we affirm.

AFFIRMED.