RONNIE R. SMITH, APPELLANT, V. THE GOODYEAR TIRE AND RUBBER COMPANY, APPELLEE.
636 N.W.2d 884

Filed December 4, 2001.    No. A-01-154.

Jeffry D. Patterson, of Bartle & Geier, for appellant.

Anne E. Winner and Joel D. Nelson, of Keating, O'Gara, Davis & Nedved, P.C., for appellee.

IRWIN, Chief Judge, and INBODY and CARLSON, Judges.

CARLSON, Judge.

## INTRODUCTION

Ronnie R. Smith appeals from an order of the Nebraska Workers' Compensation Court review panel affirming the Workers' Compensation Court trial judge's dismissal of Smith's petition for benefits relating to injuries Smith allegedly sustained to his left knee while employed at The Goodyear Tire and Rubber Company (Goodyear). For the reasons set forth below, we reverse, and remand for further proceedings.

## BACKGROUND

On April 15, 1999, Smith filed a petition alleging that on July 17, 1992, while working for Goodyear, he sustained an injury to his left knee when he was struck on the left knee by a metal bar which caused him to fall and further twist his knee. Smith alleged that he had received treatment for his injury, including surgery on April 20, 1993. Smith stated that although he returned to his job with Goodyear, he continued to experience problems with his left knee. Smith also alleged that on June 10, 1997, he experienced a material change in the severity of his left knee symptoms. Smith stated that as the result, he underwent a second surgery on his left knee on August 19, 1997. Smith alleged that following surgery, he was subject to permanent work restrictions and was unable to return to work at Goodyear. Smith prayed for an award of workers' compensation and medical expenses.

In an answer filed May 4, 1999, Goodyear generally denied Smith's allegations and affirmatively alleged that Smith failed to give Goodyear proper notice, that Smith's claim was barred by the statute of limitations, and that Smith's claim was the result of an independent intervening cause.

On July 30, 1999, Smith filed a motion to disqualify Goodyear's counsel, stating that Goodyear's counsel's law firm previously represented Smith in a similar or substantially related matter.

In an order filed August 6, 1999, the trial court overruled Smith's motion to disqualify Goodyear's counsel.

Trial was held on June 2, 2000. At trial, Smith testified that on July 17, 1992, he was struck on the left knee with a metal bar at work. The record shows that subsequently, Smith received conservative treatment for his left knee from the Goodyear medical

staff. After this treatment proved unsuccessful, Smith was referred to an orthopedic surgeon, Dr. Patrick Clare, who performed arthroscopic surgery on Smith's left knee in April 1993. The record shows that eventually, Smith was able to return to work at Goodyear without restrictions.

The record shows that on August 8, 1996, while working at Goodyear, Smith reported to the Goodyear dispensary complaining of back pain after "wrestling some sort of tub or large object." On September 16, a Goodyear doctor referred Smith to physical therapy at the Goodyear Fitness Center for his back injury.

The evidence at trial shows that the fitness center is a nonprofit organization and independent from Goodyear itself. However, the director of the fitness center is a Goodyear employee, and this employee supervises all the activities at the fitness center except those in the physical therapy area. Goodyear leases the physical therapy portion of the fitness center and supplies most of the equipment in the physical therapy area. The physical therapists in the fitness center are not Goodyear employees; rather, Goodyear contracts with St. Elizabeth Community Health Center, which provides physical therapists for the fitness center. The record shows that the fitness center is the Goodyear doctors' first choice for physical therapy for Goodyear employees, provided the fitness center can manage the specific injury.

On December 10, 1996, Smith visited the dispensary, complaining of right elbow pain. After seeing a Goodyear doctor, Smith was placed on light duty and was eventually referred to a non-Goodyear doctor, Clare. On January 10, 1997, Smith was referred to the fitness center by a Goodyear doctor for physical therapy on his elbow.

The record shows that while undergoing physical therapy for both his knee and his back, a Goodyear doctor wrote an order in early February 1997 expanding Smith's physical therapy to include aerobic exercise, including use of a stair stepper. The record also shows that at one point, Smith's doctor ordered an increase in Smith's use of the stair stepper. Smith testified that when the physical therapist increased his use of the stair stepper, it caused pain in his left knee. Smith testified that most likely, this incident occurred on February 21, 1997. Smith testified that he did not return to physical therapy after this.

Smith testified that after the stair stepper incident, he was able to do his job, but was in great pain. Smith testified that 5 or 6 weeks after he experienced increased left knee pain, he was unable to do his job and sought medical care. The record shows that Smith saw Clare on June 10, 1997, for his knee pain. When conservative measures failed to alleviate Smith's pain, Smith underwent knee surgery on August 19. The record shows that after surgery and subsequent physical therapy, Smith was unable to return to his old job at Goodyear.

Clare opined that as of January 8, 1998, Smith was at maximum medical improvement. On January 16, a Goodyear doctor stated that Clare indicated that "Ronnie should be restricted from work involving prolonged standing, pushing or pulling and should be involved in work in a seated position through the work shift." Smith underwent four jobsite evaluations in an attempt to return to work. The record shows that one of these jobs was found to be within Smith's restrictions, but apparently, Goodyear did not make this job available to Smith.

In a letter to Smith's counsel dated December 10, 1999, Clare wrote:

I feel Ron's current left knee condition is the direct and natural result of his initial left knee injury but I would further qualify that by mentioning that his exogenous obesity in addition to the knee injury is a contributing factor. Furthermore, I think the type of work he was doing which was extremely heavy has contributed to his present left knee condition.

In a letter to Goodyear's counsel dated April 28, 2000, Dr. Dean Wampler, who interviewed and examined Smith upon Goodyear's request, stated:

The findings at the time of [Smith's] 1997 surgery indicate a new injury. Not only was there mild advancement of the pre-existing chondromalacia problem of '92-'93, there was a new medial meniscus tear on the posterior horn. This tear cannot be considered an advancement of the underlying condition produced by his 1992 injury. The findings are a new traumatic event.

Mr. Smith's description of the events on the stair stepper in June of 1997 are very compatible with a new injury

to the medial meniscus. A person weighing more than 300 lb., using a stair stepper in an aggressive manner can produce stresses to the knee that are expected to produce meniscus tearing.

In an order of dismissal filed August 14, 2000, the trial court dismissed Smith's petition, finding that Smith was not entitled to workers' compensation benefits for his 1997 knee injury.

Smith appealed, and the Workers' Compensation Court review panel affirmed without opinion. Smith appeals.

## ASSIGNMENTS OF ERROR

Smith argues, condensed and restated, that the trial court erred in (1) concluding that the injury Smith suffered to his left knee while receiving physical therapy in February 1997 was not compensable, (2) concluding that Smith suffered an aggravation of a preexisting left knee condition in February 1997, and (3) allowing Goodyear's counsel to cross-examine Smith regarding a prior injury to his right knee.

## STANDARD OF REVIEW

An appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court did not support the order or award. *Blizzard v. Chrisman's Cash Register Co.*, 261 Neb. 445, 623 N.W.2d 655 (2001). An appellate court is obligated in workers' compensation cases to make its own determinations as to questions of law. *Gebhard v. Dixie Carbonic*, 261 Neb. 715, 625 N.W.2d 207 (2001).

## ANALYSIS

On appeal, Smith argues that the trial court erred in concluding that the injury Smith suffered to his left knee while receiving physical therapy in February 1997 was not compensable.

There is no factual dispute in this case. Whether an injury arose out of and in the course of employment is clearly a question

of law, in connection with which a reviewing court has an obligation to reach its own conclusions independent of those reached by the inferior courts. *LaCroix v. Omaha Public Schools*, 254 Neb. 1014, 582 N.W.2d 283 (1998).

■ Neb. Rev. Stat. § 48-101 (Reissue 1998) compensates an employee for injury caused by an accident arising out of and in the course of his or her employment. *Torres v. Aulick Leasing*, 258 Neb. 859, 606 N.W.2d 98 (2000). In a workers' compensation case, the plaintiff must establish by a preponderance of the evidence that the injury for which an award is sought arose out of and in the course of employment. *Owen v. American Hydraulics*, 258 Neb. 881, 606 N.W.2d 470 (2000).

Goodyear contends that Smith failed to satisfy the second prong of § 48-101, that being whether Smith's injury was in the course of his employment. Specifically, Goodyear argues that Smith did not suffer his knee injury in the course of employment because at the time of his injury, "Smith was pursuing exercise and rehabilitation rather than his work duties." Brief for appellee at 11. Goodyear also argues that an injury suffered during physical therapy is only compensable if and only if the injury sustained during rehabilitation was to the body part which is the subject of the workers' compensation claim. We disagree with Goodyear on both counts.

In its order, the trial court found that the episode on the stair stepper was not within Smith's course of employment and dismissed Smith's petition. Smith argues that the trial court erred as a matter of law in reaching this conclusion.

Given the lack of comparable cases in Nebraska, we look to the leading treatise in the area, 1 Arthur Larson & Lex K. Larson, Larson's Worker's Compensation Law § 10.05 at 10-11 (2001), which states:

> Since, in the strict sense, none of the consequential injuries we are concerned with are in the course of employment, it becomes necessary to contrive a new concept, which we may for convenience call "quasi-course of employment." By this expression is meant activities undertaken by the employee following upon his or her injury which, although they take place outside the time and space limits of the employment, and would not be considered employment

activities for usual purposes, are nevertheless related to the employment in the sense that they are necessary or reasonable activities that would not have been undertaken but for the compensable injury.

Thus, in the instant case, although Smith's physical therapy for his back and elbow injuries in 1997 was outside the time and space limits of Smith's employment, the question becomes whether Smith's physical therapy related to his employment in the sense that Smith's therapy was a necessary or reasonable activity that Smith would not have undertaken but for his back and elbow injuries.

Other jurisdictions have addressed similar situations. In *Moretto v. Samaritan Health System*, 198 Ariz. 192, 8 P.3d 380 (Ariz. App. 2000), Moretto injured his knee at work. While in the hospital after knee surgery, Moretto injured his back while undergoing physical therapy for his knee. In holding that Moretto's back injury was compensable, the Arizona Court of Appeals stated that at the time of his second injury, Moretto was fulfilling a duty of his employment by undergoing necessary treatment of his compensable knee injury.

The Oregon Court of Appeals reached the same conclusion in *Barrett Business Services v. Hames*, 130 Or. App. 190, 881 P.2d 816 (1994). In *Barrett Business Services*, Hames suffered a compensable dislocation of his right shoulder when he fell from a ladder scaffold at work. During treatment for his shoulder, Hames developed a "frozen shoulder." During physical therapy to treat Hames' frozen shoulder, Hames' right ulnar nerve was injured. Hames' employer denied Hames' workers' compensation claim and the referee upheld that denial. The workers' compensation board reversed, and awarded Hames' benefit for his ulnar nerve injury. The Oregon Court of Appeals affirmed the board's decision, stating that Hames' ulnar nerve injury was compensable because that injury was a direct result of pursuing a reasonable and necessary course of treatment, that being physical therapy for his compensable shoulder injury.

Similarly, in the instant case, Smith's 1997 knee injury was the direct result of a reasonable and necessary course of treatment, that being physical therapy for his elbow and back injuries. The evidence Smith produced at trial clearly showed that on August 8,

1996, Smith suffered an injury to his back while at work, and that in early September, a Goodyear doctor referred Smith to physical therapy at the fitness center for his back injury. In December 1996, Smith injured his elbow at work, and in January 1997, a Goodyear doctor sent Smith to the fitness center for physical therapy for his elbow. While Smith was undergoing physical therapy for his back and his elbow concurrently, the Goodyear doctor wrote an order including aerobic exercise in Smith's physical therapy, specifically, use of a stair stepper. In late February, Smith's doctor increased Smith's use of the stair stepper, and Smith testified that on February 21, he experienced pain in his left knee while using the stair stepper. Given this evidence, we conclude that Smith's physical therapy related to his employment in the sense that Smith's therapy was a necessary or reasonable activity that Smith would not have undertaken but for his back and elbow injuries. Therefore, we conclude that the trial court erred as a matter of law in concluding that Smith's 1997 knee injury did not arise out of and was not in the course of Smith's employment.

We reach this conclusion after taking into consideration Goodyear's argument that Smith cannot recover for his 1997 knee injury, because although Smith introduced evidence about his back and elbow injuries requiring physical therapy in February 1997, he did not plead these injuries in his petition. Essentially, Goodyear argues that Smith is unable to recover because of a variance between his pleadings and the evidence at trial.

Neb. Rev. Stat. § 48-168(1) (Reissue 1998) states in part: "The Nebraska Workers' Compensation Court shall not be bound by the usual common-law or statutory rules of evidence or by any technical or formal rules of procedure, other than as herein provided." Neb. Rev. Stat. § 25-846 (Reissue 1995) states in part: "No variance between the allegation in a pleading and the proof is to be deemed material unless it has actually misled the adverse party to his prejudice, in maintaining his action or defense upon the merits."

In *Hayes v. A.M. Cohron, Inc.*, 224 Neb. 579, 400 N.W.2d 244 (1987), *disapproved on other grounds, Heiliger v. Walters & Heiliger Electric, Inc.*, 236 Neb. 459, 461 N.W.2d 565 (1990), the Nebraska Supreme Court cited the above statutes in addressing an employer's claim on appeal. On appeal, the employer

contended that Hayes could not recover workers' compensation benefits, because while the compensation court found that the injury resulted from the cumulative trauma attendant to Hayes' frequently working on her knees, Hayes had pled that the injury occurred as the result of a specific, single incident, the lifting of a beam. The employer argued that the compensation court's finding was outside the issues of the case.

The Supreme Court dismissed the employer's argument, finding that Hayes' employer was not misled by the variance between Hayes' pleadings and the evidence, since the pleadings did not fail to advise Hayes' employer of the issues to defend, that is, whether Hayes sustained injuries arising out of and in the course of her employment. See, also, *Sands v. School Dist. of City of Lincoln*, 7 Neb. App. 28, 581 N.W.2d 894 (1998) (holding that plaintiff's petition which alleged cause of her knee injuries which was different from cause proved at trial did not preclude award of workers' compensation benefits). For the above reasons, we conclude that the variance between Smith's pleading and proof does not preclude Smith's recovery.

## CONCLUSION

After reviewing the record, we conclude that the trial court erred as a matter of law in concluding that Smith was not entitled to workers' compensation benefits because his 1997 knee injuries did not arise out of and were not in the course of Smith's employment with Goodyear. Given our conclusion, it is unnecessary to address Smith's remaining assignments of error. See *Kelly v. Kelly*, 246 Neb. 55, 516 N.W.2d 612 (1994) (appellate court is not obligated to engage in analysis which is not necessary to adjudicate case and controversy before it).

We reverse the trial court's decision and remand for further proceedings consistent with this opinion.

REVERSED AND REMANDED FOR
FURTHER PROCEEDINGS.