Debra Yost, appellant and cross-appellee, v.
Davita, Inc., appellee and cross-appellant.
___ N.W.2d ___

Filed December 29, 2015.    Nos. A-15-197, A-15-234, A-15-235.

1. **Workers' Compensation: Appeal and Error.** On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

2. **Workers' Compensation: Evidence: Appeal and Error.** If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is precluded from substituting its view of the facts for that of the compensation court.

3. **Workers' Compensation.** Under Neb. Rev. Stat. § 48-120(1)(a) (Supp. 2015), an employer is liable for all reasonable medical, surgical, and hospital services which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment.

4. ____. Whether medical treatment is reasonable or necessary to treat a workers' compensation claimant's compensable injury is a question of fact.

5. **Workers' Compensation: Appeal and Error.** Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong.

6. **Workers' Compensation.** A procedure that provides relief from the symptoms of an injury is compensable under Neb. Rev. Stat. § 48-120(1)(a) (Supp. 2015), regardless of whether those symptoms produce a permanent physical impairment or disability.

7. ____. Neb. Rev. Stat. § 48-120(1)(a) (Supp. 2015) requires three factors be established before payment for a medical service is required: that the service (1) is reasonable, (2) is required by the work injury, and (3) will

relieve pain or promote or hasten the employee's restoration to health and employment.

8. **Workers' Compensation: Expert Witnesses: Physicians and Surgeons.** The Workers' Compensation Court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony.

9. \_\_\_\_: \_\_\_\_: \_\_\_\_. Resolving conflicts within a health care provider's opinion rests with the Workers' Compensation Court, as the trier of fact.

10. **Workers' Compensation: Expert Witnesses: Physicians and Surgeons: Appeal and Error.** When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the Workers' Compensation Court.

11. **Workers' Compensation: Proof.** An applicant seeking modification of a workers' compensation award, or an approved agreement and stipulation, under Neb. Rev. Stat. § 48-141 (Reissue 2010) must prove by a preponderance of the evidence that an increase in his or her incapacity is due solely to the injury resulting from the original accident.

12. \_\_\_\_: \_\_\_\_. To establish a change in incapacity under Neb. Rev. Stat. § 48-141 (Reissue 2010), an applicant must show a change in impairment and a change in disability.

13. **Workers' Compensation: Words and Phrases.** In a workers' compensation context, impairment refers to a medical assessment whereas disability relates to employability.

14. **Workers' Compensation: Appeal and Error.** Whether an injured worker's incapacity has increased since the entry of an award of benefits so as to justify modification of the award is a finding of fact, and upon appellate review, the findings of fact made by the trial judge have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong.

15. **Workers' Compensation: Words and Phrases.** Under Neb. Rev. Stat. § 48-121 (Reissue 2010), a workers' compensation claimant may receive permanent or temporary workers' compensation benefits for either partial or total disability. "Temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity.

16. \_\_\_\_: \_\_\_\_. Temporary disability ordinarily continues until the claimant is restored so far as the permanent character of his or her injuries will permit.

17. **Workers' Compensation.** Compensation for temporary disability ceases as soon as the extent of the claimant's permanent disability is ascertained.

18. \_\_\_\_. Temporary disability should be paid only to the time when it becomes apparent that the employee will get no better or no worse because of the injury.

19. **Workers' Compensation: Words and Phrases.** The term "maximum medical improvement," describes the point of transition from temporary to permanent disability.

20. **Workers' Compensation.** Once a worker has reached maximum medical improvement from a disabling injury and the worker's permanent disability and concomitant decreased earning capacity have been determined, an award of permanent disability is appropriate.

21. \_\_\_\_. Generally, whether a workers' compensation claimant has reached maximum medical improvement is a question of fact.

22. **Workers' Compensation: Judgments: Time: Appeal and Error.** The Nebraska Workers' Compensation Court may, on its own motion or on the motion of any party, modify or change its findings, order, award, or judgment at any time before appeal and within 14 days after the date of such findings, order, award, or judgment.

23. **Workers' Compensation.** The Nebraska Workers' Compensation Court may rule upon any motion addressed to the court by any party to a suit or proceeding, including, but not limited to, motions for summary judgment or other motions for judgment on the pleadings but not including motions for new trial.

24. **Pleadings: Judgments.** A postjudgment motion must be reviewed based on the relief sought by the motion, not based on the title of the motion.

25. **New Trial: Words and Phrases.** A new trial is defined as a reexamination in the same court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court.

26. **Evidence: Words and Phrases.** Newly discovered evidence has been defined as evidence which neither the litigant nor counsel could have discovered by the exercise of reasonable diligence.

27. **New Trial: Evidence.** Newly discovered evidence must be more than merely cumulative; it must be competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted.

28. **Appeal and Error.** An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it.

Appeal from the Workers' Compensation Court: Daniel R. Fridrich, Judge. Affirmed.

Eric B. Brown, of Atwood, Holsten, Brown, Deaver & Spier Law Firm, P.C., L.L.O., for appellant.

Caroline M. Westerhold and Stephen J. Schultz, of Baylor, Evnen, Curtiss, Grimit & Witt, L.L.P., for appellee.

Pirtle, Riedmann, and Bishop, Judges.

Riedmann, Judge.

## INTRODUCTION

Debra Yost appeals, and Davita, Inc., cross-appeals, from the further award of the Workers' Compensation Court. On appeal, Yost argues that the compensation court erred in finding that Davita was not required to pay for the cost of her spinal cord stimulator.

On cross-appeal, Davita challenges the compensation court's finding that Yost suffered an increase in incapacity and is now at maximum medical improvement (MMI) for her mental injury. It also challenges the court's refusal to reopen the record for further evidence. We find no merit to the arguments made on appeal or cross-appeal and therefore affirm.

## BACKGROUND

On June 3, 2008, Yost suffered a work-related injury to her lower back. In an award dated November 25, 2009, the compensation court found that she reached MMI with respect to her low-back injury and sustained a 35-percent permanent loss of earning capacity. Davita was ordered to pay Yost's past and future medical expenses.

On May 26, 2010, Yost filed an application for modification, alleging that she suffered material and substantial changes in her physical condition and an increase in incapacity due to her work-related injuries. Yost and Davita entered into an agreement regarding modification of the award. The parties agreed that Yost suffered an increase in incapacity due solely to her work injury and again became temporarily totally disabled pending low-back surgery, which was approved by

Davita. The parties further stipulated that the worsening of Yost's back condition also caused or aggravated depression symptoms. Thus, she was entitled to all reasonable and necessary future medical care for her low-back injuries as well as her depression symptoms. The compensation court approved the parties' agreement and stipulations.

In January 2011, Yost underwent spinal fusion surgery at the L4-5 and L5-S1 levels of her spine. Following surgery, she began to experience back spasms and her pain continued. She underwent additional treatment, including pain management, therapy, and medication. Eventually, based on Yost's continued pain and problems stemming from her lower back, her spinal surgeon recommended a spinal cord stimulator, which he believed would provide her some relief. He referred her to an anesthesiologist and pain specialist who determined that Yost was a candidate for a trial spinal cord stimulator, which she received in March 2013. The trial was considered successful, and Yost received a permanent stimulator in April 2013.

At the time Yost was undergoing continued treatment for her back, she was also seeking treatment for depression, insomnia, and anxiety. In May 2011, Yost was diagnosed with major depression and prescribed antidepressant medication. In August, her treating psychiatrist opined that Yost's depression was secondary in large part to her June 2008 work injury. He did not believe that she was able to work at all given that her depression was impairing her concentration. In May 2013, her treating psychiatrist reported that her condition remained unchanged and that in his opinion, Yost remained permanently and totally disabled from a psychiatric standpoint.

Davita filed a petition for modification, alleging that Yost experienced a decrease in incapacity and had reached MMI. Yost filed an answer and counterclaim for modification, claiming that she had again reached MMI and requesting that the court find her permanently and totally disabled as

a result of her work-related injuries. She also requested that the court order Davita to cover the cost of her spinal cord stimulator.

Trial was held on the parties' requests for modification, and the compensation court entered a further award on February 13, 2015. The court found that Yost had reached MMI for her low-back condition as of October 19, 2012, and for her psychological condition as of June 18, 2014. Relying on the opinions of Drs. Robert Arias and Vithyalakshmi Selvaraj, the court determined that Yost is completely disabled as a result of her depression.

The court also found that Davita was not responsible for the cost of the spinal cord stimulator. The court acknowledged Yost's testimony that the stimulator alleviated some symptoms in her legs and feet, but it emphasized that she still has pain in her lower back. The court also noted that several physicians opined that the stimulator was not necessary and would not alleviate her symptoms. Further, the court observed that Yost testified that the stimulator helped her functionality but did not aid in her return to work.

On February 24, 2015, Davita filed a motion to reopen the evidence. Davita alleged that it had newly discovered evidence relevant to the issues in the case. At a hearing on the motion, an affidavit from Yost's former husband was received into evidence wherein he stated that he had personal knowledge regarding misrepresentations Yost made as to the cause and extent of her back injuries and manipulations she made of medical treatment for the purpose of increasing the value of her workers' compensation claim. The compensation court subsequently entered an order finding that it lacked authority to open the record to receive additional evidence after having already rendered its decision.

On March 3, 2015, Davita filed a motion for offer of proof requesting the opportunity to make an offer of proof to allow it to timely perfect an appeal from the denial of its request to reopen the evidence. On March 4, Yost filed a notice of

her intent to appeal the further award. A hearing on Davita's motion for offer of proof was held on March 6, and the compensation court determined that it no longer had jurisdiction over the matter because Yost had already filed her notice of appeal. Therefore, Davita's motion was dismissed. Yost timely appeals the further award, and Davita cross-appeals the denial of its postjudgment motions. The matters have been consolidated for our consideration.

## ASSIGNMENTS OF ERROR

On appeal, Yost assigns that the compensation court erred in failing to require that Davita pay for the spinal cord stimulator.

On cross-appeal, Davita assigns that the compensation court erred in finding that (1) Yost suffered an increase in incapacity due solely to her work-related accident and that she is at MMI for her mental injury, (2) it lacked authority to reopen the evidentiary record, and (3) it lacked jurisdiction over Davita's motion to make an offer of proof.

## STANDARD OF REVIEW

[1,2] Under Neb. Rev. Stat. § 48-185 (Cum. Supp. 2014), an appellate court may modify, reverse, or set aside a Workers' Compensation Court decision only when (1) the compensation court acted without or in excess of its powers; (2) the judgment, order, or award was procured by fraud; (3) there is not sufficient competent evidence in the record to warrant the making of the order, judgment, or award; or (4) the findings of fact by the compensation court do not support the order or award. *Manchester v. Drivers Mgmt.*, 278 Neb. 776, 775 N.W.2d 179 (2009). On appellate review, the findings of fact made by the trial judge of the Workers' Compensation Court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*. If the record contains evidence to substantiate the factual conclusions reached by the trial judge in workers' compensation cases, an appellate court is

precluded from substituting its view of the facts for that of the compensation court. *Id*.

## ANALYSIS

*Spinal Cord Stimulator.*

Yost asserts that the compensation court erred in finding that the cost of the spinal cord stimulator was not reasonable. We find no merit to this argument.

[3-5] Under Neb. Rev. Stat. § 48-120(1)(a) (Supp. 2015), an employer is liable for all reasonable medical, surgical, and hospital services which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment. Whether medical treatment is reasonable or necessary to treat a workers' compensation claimant's compensable injury is a question of fact. *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). Upon appellate review, the findings of fact made by the trial judge of the compensation court have the effect of a jury verdict and will not be disturbed unless clearly wrong. *Id*.

In the present case, in finding that Davita was not liable for the cost of the spinal cord stimulator, the compensation court relied upon the opinions of Drs. Timothy Burd, Charles Taylon, and Chris Cornett. In an office note dated June 18, 2011, Dr. Burd reported that after reviewing Yost's recent MRI, he did not identify any significant pathology or reasons for her spinal cord stimulator.

Similarly, in a report dated October 20, 2012, Dr. Taylon stated that he was unable to find any objective findings for Yost's continued pain. He stated that he "would challenge any predication by any doctor that further procedures on [Yost] could possibly make her better" and advised that further invasive procedures not be performed. In a report a month later, he specifically stated that he did not feel that Yost would benefit from a spinal cord stimulator. He reported that in his experience, such treatment is a "notorious

failure" in people with benign pain, especially those involved in litigation.

Dr. Cornett's report dated August 1, 2014, indicated that he agreed with Dr. Taylon. Dr. Cornett noted Yost's reports that the stimulator helped with some of her leg pain and toe numbness and tingling but did not really help her back pain, and she still rated her pain as a 6 or 7 out of 10 primarily in her lower back. Dr. Cornett agreed with Dr. Taylon's opinion that Yost was at MMI in October 2012 and therefore did not require additional treatment. Thus, he would not have recommended the spinal cord stimulator.

In its further award, the compensation court cited the opinions from Drs. Burd, Taylon, and Cornett in reaching its decision that the spinal cord stimulator was not reasonable treatment. Specifically, the court stated: "The [c]ourt simply does not believe that for the cost incurred the spinal cord stimulator was reasonable treatment in light of the limited benefit it provided." Yost interprets the court's statements as a finding that the cost for the spinal cord stimulator was not reasonable. Yost misinterprets the court's finding.

As stated above, under § 48-120(1)(a), an employer is liable for all reasonable medical, surgical, and hospital services which are required by the nature of the injury and which will relieve pain or promote and hasten the employee's restoration to health and employment. The compensation court found that in light of Drs. Burd's, Taylon's, and Cornett's opinions, coupled with Yost's testimony that she still has pain in her lower back after the stimulator was implanted, the cost outweighed the benefit, resulting in a finding that it was not reasonable treatment. We find no error in this analysis.

[6,7] Yost cites to *Pearson v. Archer-Daniels-Midland Milling Co.*, 282 Neb. 400, 803 N.W.2d 489 (2011), to argue that the implementation of the stimulator was reasonable, and therefore compensable, because it alleviated some symptoms in her legs and feet. In *Pearson*, the Supreme Court observed that a procedure that provides relief from the *symptoms* of an

injury is compensable under § 48-120(1)(a) (Reissue 2010), regardless of whether those symptoms produce a permanent physical impairment or disability. (Emphasis in original.) It is important to note, however, that in *Pearson*, the Supreme Court remanded the cause for a factual determination as to whether the procedure for which the employee sought compensation "falls under the provisions of § 48-120." 282 Neb. at 408, 803 N.W.2d at 495. On remand, the Workers' Compensation Court found Pearson's procedure was not compensable because it was not required by the work-related injury and the Supreme Court affirmed. *Pearson v. Archer-Daniels-Midland Milling Co.*, 285 Neb. 568, 828 N.W.2d 154 (2013). In so doing, the court iterated that § 48-120(1)(a) requires three factors be established: that the service (1) is reasonable, (2) is required by the work injury, and (3) will relieve pain or promote or hasten the employee's restoration to health and employment.

In the present case, Yost focuses only on the factor dealing with relief of pain; she ignores the requirements that the service be reasonable and be required by the nature of the injury. Although the stimulator afforded relief to some of Yost's symptoms, she admitted that it did not go high enough to help her lower back, and when questioned by Dr. Cornett, she still rated the pain in her back as a "6 to 7 out of 10." Thus, although there was improvement in some secondary symptoms, the stimulator was not providing relief from the main symptom of her work-related injury, namely her low-back pain. Given the medical testimony of Drs. Burd, Taylon, and Cornett, and Yost's own testimony of the limited relief the stimulator provided, we cannot say the court was clearly wrong in determining that the spinal cord stimulator was not a reasonable service for which Davita was liable.

[8-10] We recognize that some of Yost's medical providers issued opposing viewpoints and opined that the spinal cord stimulator was causally related, reasonable, and necessary to treat her work-related injuries. However, the Workers'

Compensation Court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). Resolving conflicts within a health care provider's opinion also rests with the compensation court, as the trier of fact. *Id*. When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Id*. The compensation court chose to find the opinions of Drs. Burd, Taylon, and Cornett credible, and we do not reweigh that decision on appeal. Based on the record before us, we cannot say the compensation court was clearly wrong in determining that Davita was not liable for the costs of the stimulator.

*Increase in Incapacity.*

On cross-appeal, Davita claims that the compensation court erred in finding that Yost suffered an increase in incapacity due solely to her work-related accident. Davita argues that any increase in Yost's incapacity was not due solely to her work-related injury because the compensation court found that any pain and treatment related to the L2-3 level of Yost's spine was not related to the June 2008 work accident, and Yost's depression was exacerbated by her generalized back pain, which included pain at the L2-3 level. We find no merit to this argument.

[11-14] An applicant seeking modification of a workers' compensation award, or an approved agreement and stipulation, under Neb. Rev. Stat. § 48-141 (Reissue 2010) must prove by a preponderance of the evidence that an increase in his or her incapacity is due solely to the injury resulting from the original accident. See *Jurgens v. Irwin Indus. Tool Co.*, 20 Neb. App. 488, 825 N.W.2d 820 (2013). To establish a change in incapacity under § 48-141, an applicant must show a change in impairment and a change in disability. *Jurgens v. Irwin Indus. Tool Co., supra*. Impairment refers to a medical

assessment whereas disability relates to employability. *Id*. Whether an injured worker's incapacity has increased since the entry of an award of benefits so as to justify modification of the award is a finding of fact, and upon appellate review, the findings of fact made by the trial judge have the effect of a jury verdict and will not be disturbed on appeal unless clearly wrong. See *Rader v. Speer Auto*, 287 Neb. 116, 841 N.W.2d 383 (2013).

In *Sands v. School Dist. Of City of Lincoln*, 7 Neb. App. 28, 581 N.W.2d 894 (1998), this court analyzed the meaning and effect of the phrase "due solely to the injury" to determine whether the evidence supported a finding that an employee's increased disability was due solely to a prior work injury. There, the employee suffered a work-related injury to her knee in 1983. She also had degenerative osteoarthritis which affected her knee. The employee later sought additional benefits based on increased disability.

At the modification hearing, the employee's physician testified that he found it difficult to separate how much disability was due to repeated traumatic events and the presence of arthritis but that the original work injury was a material and substantial factor as it related to the need for knee replacement and the impairment. He also testified that he was unable to determine the amount of impairment that was caused by the natural progression of the preexisting conditions or by new traumas other than the work accident. He further testified that there were several major contributing factors to the employee's treatment including the original work-related injury, the degenerative osteoarthritis, the multiple other incidents of trauma to her knees, and the natural aging process. Despite this testimony, the workers' compensation court found that the employee had suffered an increase in disability due solely to the original work accident and awarded compensation accordingly.

On appeal, we noted that in *Hohnstein v. W.C. Frank*, 237 Neb. 974, 468 N.W.2d 597 (1991), the Supreme Court stated

that the question to be considered was whether the worker's medical expert evidence sufficiently demonstrated the causal connection between the original work-related accident and the increased incapacity. We observed that in *Hohnstein*, the Supreme Court ultimately concluded that for medical testimony to be the basis for an award, it must be sufficiently definite and certain that a conclusion can be drawn that there was a causal connection between the accident and the disability. We reiterated that the compensation court is the sole judge of credibility and that an appellate court does not substitute its judgment for that of the lower court. We thus affirmed, holding that the record did not justify a finding that the trial court clearly erred in determining that the increase in incapacity was due solely to the original accident.

In the present case, in reaching its decision that Yost was permanently and totally disabled as a result of her psychological injury, the compensation court relied on the opinions of Drs. Arias and Selvaraj as well as a functional capacity evaluation. In a November 17, 2014, letter, Dr. Selvaraj wrote that although Yost experienced minor stress from family issues, it is her depression and psychological conditions associated with her work disability that is solely attributable to her incapacity and limitations on her ability to work. She further reported that all of the psychological and psychiatric treatment Yost received was reasonable and necessary to treat injuries resulting from the June 2008 work accident.

Similarly, Dr. Arias agreed that Yost's psychological conditions were causally related to injuries from her original work accident and complications from her back fusion surgery. The functional capacity evaluation accepted the opinions of Drs. Arias and Selvaraj and determined that Yost suffered a 100-percent loss of earning capacity. We cannot find that it was clear error when the compensation court relied on these medical opinions to find Yost's increased incapacity was due solely to her work injury.

We also note that the compensation court made a factual finding that the L2-3 level was not a pain generator based on an opinion by Dr. Cornett. This finding was not challenged on appeal. Thus, all of the pain Yost experiences in her back is, in fact, related to the work accident. And it is her back pain and limitations from her work-related back injury that have exacerbated her depression symptoms to the point that she is unable to work.

Based on the record before us, we find no clear error in the compensation court's decision. We therefore affirm the finding that Yost sustained a 100-percent loss of earning capacity based solely on the 2008 work-related injuries.

*MMI for Psychological Injury.*

Davita next contends that the compensation court erroneously determined that Yost was at MMI for her depression. We disagree.

[15-18] Under Neb. Rev. Stat. § 48-121 (Reissue 2010), a workers' compensation claimant may receive permanent or temporary workers' compensation benefits for either partial or total disability. "Temporary" and "permanent" refer to the duration of disability, while "total" and "partial" refer to the degree or extent of the diminished employability or loss of earning capacity. *Rodriguez v. Hirschbach Motor Lines*, 270 Neb. 757, 707 N.W.2d 232 (2005). Temporary disability ordinarily continues until the claimant is restored so far as the permanent character of his or her injuries will permit. *Id.* Compensation for temporary disability ceases as soon as the extent of the claimant's permanent disability is ascertained. *Id.* In other words, temporary disability should be paid only to the time when it becomes apparent that the employee will get no better or no worse because of the injury. *Id.*

[19-21] The term "maximum medical improvement," or MMI, has been used to describe the point of transition from temporary to permanent disability. See *id*. Once a worker has reached MMI from a disabling injury and the worker's

permanent disability and concomitant decreased earning capacity have been determined, an award of permanent disability is appropriate. *Id*. Generally, whether a workers' compensation claimant has reached MMI is a question of fact. *Id*.

Dr. Arias placed Yost at MMI for her depression as of June 18, 2014, which is the date the compensation court utilized for its findings. Dr. Selvaraj, Yost's treating psychiatrist, indicated that she hoped Yost could return to work and continued to treat her with the hope of improvement. Nevertheless, Dr. Selvaraj also placed Yost at MMI, albeit as of November 17, 2014. Dr. Selvaraj explained that if Yost's physical back injuries are not going to get any better, the prognosis for improvement for her mental condition is "pretty limited." It is undisputed that Yost is at MMI for her back injury, and she has declined additional treatment. Because Yost's depression is dependent upon her physical pain and limitations, the compensation court found that Yost is as good as she is going to get physically and, therefore, psychologically. Again, we recognize there were opinions to the contrary, including medical opinions that Yost was "malingering" and that her depression and anxiety were motivated by secondary gain. However, the compensation court recognized the conflicting evidence as well and nevertheless concluded that the preponderance of the evidence established that Yost had reached MMI for her psychological injury.

We repeat that the compensation court is the sole judge of the credibility and weight to be given medical opinions, even when the health care providers do not give live testimony. See *Damme v. Pike Enters.*, 289 Neb. 620, 856 N.W.2d 422 (2014). Resolving conflicts within a health care provider's opinion also rests with the court, as the trier of fact. *Id*. When the record presents nothing more than conflicting medical testimony, an appellate court will not substitute its judgment for that of the compensation court. *Id*. As such, we find no clear error in the compensation court's factual finding that Yost reached MMI for her depression.

*Motion to Reopen Evidence.*

In filing a motion to reopen evidence, Davita requested that the court reopen the record, accept new evidence, and reconsider its decision contained in the further award. Davita now claims that the compensation court erred in denying its motion to reopen the evidence. We find no merit to this argument.

[22] The Nebraska Workers' Compensation Court may, on its own motion or on the motion of any party, modify or change its findings, order, award, or judgment at any time before appeal and within 14 days after the date of such findings, order, award, or judgment. Neb. Rev. Stat. § 48-180 (Cum. Supp. 2014). Thus, because Davita's motion was filed 11 days after entry of the further award and prior to Yost's appeal, the compensation court had the authority under § 48-180 to modify its findings.

[23] However, the compensation court's authority does not include the ability to rule on motions for new trial. The compensation court may rule upon any motion addressed to the court by any party to a suit or proceeding, including, but not limited to, motions for summary judgment or other motions for judgment on the pleadings but not including motions for new trial. Neb. Rev. Stat. § 48-162.03 (Cum. Supp. 2014). We must therefore determine whether the compensation court properly treated Davita's motion as a request for a new trial.

[24] We recognize that Davita's motion was entitled "Motion to Reopen the Evidence or in the Alternative Motion to Modify Further Award Pursuant to §[§ ]48-180, 48-162.03 and 48-141." At the hearing, Davita argued that in reality its requests were not alternative, but, rather, it was seeking to reopen the evidence and modify the further award. A postjudgment motion must be reviewed based on the relief sought by the motion, not based on the title of the motion. *Woodhouse Ford v. Laflan*, 268 Neb. 722, 687 N.W.2d 672 (2004).

[25-27] Under Nebraska law governing general civil procedure, a new trial is defined as a reexamination in the same

court of an issue of fact after a verdict by a jury, report of a referee, or a trial and decision by the court. See, Neb. Rev. Stat. § 25-1142 (Reissue 2008); *Woodhouse Ford v. Laflan, supra*. One of the bases upon which a new trial may be granted is newly discovered evidence. See § 25-1142(7). Newly discovered evidence has been defined as evidence which neither the litigant nor counsel could have discovered by the exercise of reasonable diligence. *State v. Timmens*, 282 Neb. 787, 805 N.W.2d 704 (2011). Newly discovered evidence must also be more than merely cumulative; it must be competent, relevant, and material, and of such character as to reasonably justify a belief that its admission would bring about a different result if a new trial were granted. *Id*.

In the case at hand, Davita asked the compensation court to reopen the record, accept newly discovered evidence, and reconsider its prior decision based upon its belief that the new evidence would bring about a different result. In other words, Davita asserted that if the compensation court weighed the newly discovered evidence, it might change its decision finding that Yost was totally and permanently disabled. Regardless of how Davita's motion was titled, it was seeking a new trial based upon newly discovered evidence, which is not permitted in the compensation court.

We recognize that in *Woodhouse Ford v. Laflan, supra*, the trial court treated a motion for new trial as a motion to alter or amend, a motion which could be heard in the compensation court. However, in that case, the moving party asked the court to consider newly discovered evidence and then alter its judgment after entry of summary judgment, in which the court only determined that there were no genuine issues of fact for it to decide. Under the definition of a new trial, a party is seeking a reexamination of *an issue of fact* after a verdict, report, or trial. Thus, in *Woodhouse Ford*, the moving party was not actually seeking a reexamination of an issue of fact because no factual findings were made in the entry of summary judgment. Here, the compensation court made factual findings

with respect to the nature and extent of Yost's disability and weighed the credibility of conflicting expert opinions. Thus, Davita was, in fact, seeking a reexamination of factual issues, and the court properly treated the motion as a motion for new trial. We therefore find that the court did not err in denying the motion to reopen evidence.

*Motion for Offer of Proof.*

[28] Davita also asserts that the compensation court erroneously denied its motion to make an offer of proof. Davita sought to make an offer of proof of the newly discovered evidence it obtained in order to complete the record for appellate purposes. Based upon our finding above that the compensation court properly found it did not have the authority to rule on the motion to reopen evidence, we need not address this assignment of error. An appellate court is not obligated to engage in an analysis that is not necessary to adjudicate the case and controversy before it. *Tierney v. Four H Land Co.*, 288 Neb. 586, 852 N.W.2d 292 (2014).

## CONCLUSION

We find no merit to the arguments on appeal or cross-appeal and therefore affirm.

Affirmed.